09-7531.112-RSK                                          January 4, 2012

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| RAMIRO SANCHEZ and RYAN LUKA, on behalf of themselves and all other employees similarly situated, known and unknown, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 09 C 7531 |
| HALTZ CONSTRUCTION, INC., 1919 W. CRYSTAL, LLC, RMR GROUP, INC., ROBERT M. RYAN, II, BILL WILLIAMS, KERRY WALSH, KEVIN MACNAB, ROBYN MACNAB, MICHAEL SELVAGGIO, DANIEL DILLON, and ERIKA DOMINGUEZ | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION

Before the court are the motions of defendants Haltz Construction, Inc. ("Haltz"), Michael Selvaggio, and Daniel Dillon (collectively, the "Haltz Defendants") to: (1) dismiss plaintiffs' amended complaint; and (2) compel plaintiffs to join a necessary party pursuant to Fed. R. Civ. P. 19. For the reasons explained below we grant the Haltz Defendants' motion to dismiss in part and deny it in part; and we deny their Rule 19 motion without prejudice to renewal at a later date.

### BACKGROUND

Plaintiffs Ramiro Sanchez and Ryan Luka allege that they were employed as masonry laborers by "one or more" of the defendants

- 2 -

from approximately December 3, 2007 to April 30, 2008. (Am. Compl. ¶¶ 47-48.) Their lawsuit stems from work that they performed on a construction project at 1919 W. Crystal in Chicago. (Id. at ¶ 62.) 1919 W. Crystal, LLC ("1919 LLC") appointed RMR Group, Inc. ("RMR") to serve as the project's general contractor.[1] (Id.) RMR engaged Haltz to provide masonry and demolition work. (Id. at ¶ 63.) Haltz is owned and controlled by Dillon and Selvaggio. (Am. Compl. ¶¶ 18-20.) They are also two of the eight individuals whom plaintiffs have identified as being involved in the "payroll processes" by which plaintiffs were paid. (Id. at ¶ 28.) Haltz, in turn, engaged Kevin MacNab to act as a "consultant" to obtain labor, equipment, and supplies for the project. (Id. at ¶ 64.) Haltz also engaged Kevin MacNab, Robyn MacNab, and their company, Synergy Construction, Inc. ("Synergy"), to assist Haltz in obtaining credit with certain vendors. (Id. at ¶ 65.)[2] Plaintiffs plausibly contend that they are unable at this time to specifically identify their employer(s) given the number of individuals and entities involved in the project and the fact that they did not receive pay stubs or other documentation in connection with their employment. (Pls.' Resp. at 12-16.)

---

[1] Pursuant to a stipulation, plaintiffs voluntarily dismissed their claims against 1919 LLC and Bill Williams — an alleged owner and officer of 1919 LLC — without prejudice. (See Stipulation, dated April 9, 2010, DKT # 27.)

[2] Plaintiffs have dismissed Kevin MacNab and Robyn MacNab from this lawsuit pursuant to a consent decree. (See Consent Decree, dated Aug. 26, 2010, DKT # 41.)

- 3 -

At some point prior to December 2007 Kevin MacNab met with Dillon to discuss the project. (Am. Compl. ¶ 67.) Dillon identified himself as an agent of Haltz and Selvaggio, whom Dillon identified as Haltz's owner. (Id. at ¶¶ 68-69.) At some unspecified point after this initial meeting, Dillon gave MacNab a copy of a written contract between Haltz and RMR ("Contract A"), which provided that Haltz would supply materials, labor, equipment, and supplies to complete the project's masonry work. (Id. at ¶ 70.) Dillon told MacNab that Contract A was the "official masonry contract," which was kept on file with the project's escrow agent, Chicago Title and Trust ("Chicago Title"). (Id. at ¶ 71.) Pursuant to the contract, some portion of the contract price was held in escrow and disbursed to Haltz for labor, equipment, and supplies as the project progressed. (Id. at ¶¶ 66, 74, 98, 100.) As far as we can tell from the amended complaint, the contract did not expressly grant any other party a right to claim the funds. But plaintiffs contend that at least some portion of the money was effectively earmarked for payments to plaintiffs, the MacNabs, and Synergy. (Id. at ¶¶ 74-75.) Chicago Title disbursed funds from the escrow account between December 2007 and February 2008, but plaintiffs allege that the payments were short of the amounts required by Contract A. (Id. at ¶ 75.) Plaintiffs estimate that they and similarly-situated employees performed approximately

- 4 -

$30,000 worth of labor for which they were not paid.  (Id. at ¶ 76.)

In late February or early March 2008, Kevin MacNab was "allowed" to view a copy of the project's official masonry contract at Chicago Title's offices ("Contract B").  (Id. at ¶ 77.) Contract B's contract price was "significantly less" than Contract A's.  (Id. at ¶ 78.)  The change appeared to have been initialed by Dillon and defendant Robert Ryan, an owner and officer of RMR. (Id. at ¶¶ 24-25, 79.)  Moreover, it appeared that the parties had made the change shortly after the project commenced, and prior to the time that the plaintiffs performed the bulk of their labor. (Id. at ¶ 80.)  Plaintiffs allege on information and belief that the parties reduced the contract price to settle a dispute between Haltz and RMR concerning a "faulty concrete pour."  (Id. at ¶¶ 82, 84.)  After the parties amended the contract, Dillon made "numerous statements" to plaintiffs and to MacNab "that enough money existed in the escrow to cover the wages owed to the [plaintiffs], and that the [plaintiffs] should continue working on the Project because 'checks were on the way.'"  (Id. at ¶ 85.)  At Dillon's request, MacNab reiterated Dillon's assurances because MacNab believed — based on Contract A — that the contract price was sufficient to cover project expenses, including plaintiffs' wages.  (Id. at ¶ 89.)  These statements were false, and Dillon knew or should have known that they were false, because the amended contract price was insufficient to cover those expenses.  (Id. at ¶¶ 90-92.)  Relying

- 5 -

on Dillon's assurances, plaintiffs continued to work on the project
even though wage payments were short or nonexistent. (Id. at 88-
89.)  Plaintiffs also allege that Selvaggio diverted escrow funds
intended to cover labor costs.  In late February or early March,
Selvaggio directed MacNab to collect a $25,000 disbursement from
Chicago Title. (Id. at ¶¶ 99, 104.)  When Chicago Title refused to
release the money to MacNab or Synergy, Selvaggio directed MacNab
to tell Chicago Title that MacNab was Haltz's vice president. (Id.
at ¶ 100.)  This was false, but MacNab went along with it because
Haltz owed him money and MacNab was concerned he would not be paid
if he did not cooperate. (Id. at ¶¶ 101-02.)  Chicago Title gave
MacNab a check, which he deposited in Synergy's bank account. (Id.
at ¶ 103.)  Selvaggio then directed MacNab to pay him $11,000 of
the $25,000 disbursement, which he did.  (Id. at ¶¶ 105-108.)
Plaintiffs characterize this as an end-run around the project's
escrow-distribution plan. (Id. at ¶ 108.)

Plaintiffs assert claims against the defendants for violating
the Fair Labor Standards Act ("FLSA") and related state wage laws.
(See id. at Count I (FLSA); Count II (Illinois Minimum Wage Law
("IMWL")); and Count III (Illinois Wage Payment and Collection Act
("IWPCA") and Attorneys' Fees in Wage Actions Act ("AFWAA").)  They
also assert claims for: (1) fraud against Dillon and Haltz for
their alleged sleight-of-hand with the construction contracts
(Count IV); (2) fraud and conversion against Selvaggio for

- 6 -

diverting $11,000 that was earmarked for labor and materials (Counts V and VI); and (3) unjust enrichment against all the named defendants for retaining the benefits of plaintiffs' labor without adequate compensation (Count VII). The Haltz Defendants have moved to dismiss each count of plaintiffs' complaint.

## A.    Standard of Review

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 354 (3d ed. 2004). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 556 (2007)). When evaluating a motion to dismiss a complaint, we must accept as true all factual allegations in the complaint. Iqbal, 129 S. Ct. at 1949. However, we need not accept as true its legal conclusions; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

## B.    Plaintiffs' Wage Claims

- 7 -

**(1) Plaintiffs' Individual FLSA Claims**

The Haltz Defendants contend that the complaint does not contain enough detail to satisfy the pleading standards established in Twombly and Iqbal. Specifically, they point out that plaintiffs fail to allege the number of hours they worked, the days they worked, the total amount of money that they claim is owing, and the type of work they performed. (Defs.' Mem. at 3.) Although the complaint could be clearer on this point, we infer that the plaintiffs performed masonry construction work for the defendants. (See Am. Compl. ¶¶ 36, 43-44.) As to the other omissions, we think the defendants are overstating the plaintiffs' pleading burden. This case, and wage cases generally, are not so complicated that they require significant factual allegations "to present a story that holds together." Swanson v. Citibank, N.A., 614 F.3d 400, 404 (7th Cir. 2010); see also McCauley v. City of Chicago, --- F.3d ---, 2011 WL 4975644, *4 (7th Cir. Oct. 20, 2011) ("The required level of factual specificity rises with the complexity of the claim."); Secretary of Labor v. Labbe, 319 Fed. Appx. 761, 763 (11th Cir. 2008) ("Unlike the complex antitrust scheme at issue in Twombly that required allegations of an agreement suggesting conspiracy, the requirements to state a claim of a FLSA violation are quite straightforward."). Plaintiffs allege that they "routinely" worked more than 40 hours per week without receiving overtime pay, and that the amount of compensation they did receive

- 8 -

for the work they performed fell below the minimum-wage requirement. (Am. Compl. ¶¶ 49-50.) Plaintiffs do not need to provide more factual detail in order to state a claim that is "plausible" in the relevant sense. See Labbe, 319 Fed. Appx. at 763 (concluding that allegations substantially similar to plaintiffs' allegations in this case stated a claim for relief); cf. Swanson, 614 F.3d at 404-05 (After Twombly, "[a] plaintiff who believes that she has been passed over for a promotion because of her sex will be able to plead that she was employed by Company X, that a promotion was offered, that she applied and was qualified for it, and that the job went to someone else. That is an entirely plausible scenario, whether or not it describes what 'really' went on in this plaintiff's case."). Defendants rely on Zhong v. August Ausgust Corp., 498 F.Supp.2d 625, 629 (S.D.N.Y. 2007) for the proposition that FLSA plaintiffs must allege either the amount of unpaid wages that they claim, or else allege facts from which the court can calculate that figure. We do not believe that this requirement is consistent with the way that courts in this Circuit have applied Twombly and Iqbal. See Swanson, 614 F.3d at 404-05; see also Allen v. City of Chicago, No. 10 C 3183, 2011 WL 941383, *6 (N.D. Ill. Mar. 15, 2011) (effectively rejecting Zhong); Nicholson v. UTi Worldwide, Inc., No. 3:09-cv-722-JPG-DGW, 2010 WL 551551, *4 (S.D. Ill. Feb. 12, 2010) ("While Zhong may be right that a plaintiff *should* plead his rate of pay and the wages due, no rule requires that he do so.") (emphasis in original).

- 9 -

Defendants also argue that plaintiffs have not adequately alleged that the defendants were their "employers" as the statute defines that term. We disagree. Under the FLSA, an employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." See 29 U.S.C. § 203(d). RMR engaged Haltz to perform masonry work on the 1919 W. Crystal project. (Am. Compl. ¶ 63.) Plaintiffs allege that Selvaggio and Dillon were officers and owners of Haltz who controlled the company's day-to-day operations. (Id. at ¶¶ 18-20.) It is reasonable to infer that the plaintiffs, laborers who performed masonry work on the project, were employed by Haltz. And Selvaggio's and Dillon's control over Haltz makes them potentially liable as employers, too. See, e.g., Dominguez v. Quigley's Irish Pub, Inc., 790 F.Supp.2d 803, 823-24 (N.D. Ill. 2011). Ultimately, plaintiffs must prove their allegations as to each defendant, but they are not required to do so at this stage of the case.

Finally, we reject the Haltz Defendants' argument that we should dismiss the complaint because it leaves open the possibility that the plaintiffs worked in positions that are exempt from the FLSA's requirements. (See Defs.' Mem. at 5); see also 29 U.S.C. § 213(a)(1) (exempting individuals "employed in a bona fide executive, administrative, or professional capacity"). It is the employer's burden to establish that an employee is exempt, see Roe-Midgett v. CC Services, Inc., 512 F.3d 865, 869 (7th Cir. 2008), and "[c]omplaints need not anticipate, and attempt to plead

around, potential affirmative defenses." <u>Davis v. Indiana State Police</u>, 541 F.3d 760, 763 (7th Cir. 2008). Even if plaintiffs were required to anticipate the defendants' exemption defense, we infer from the complaint that plaintiffs performed non-exempt construction labor. (<u>See</u> <u>supra</u>.)

### (2) Plaintiffs' FLSA Collective Action Allegations

The FLSA authorizes the plaintiffs to file suit on their own behalf and on behalf of "similarly situated employees." <u>See</u> 29 U.S.C. § 216(b). Defendants argue that plaintiffs have failed to identify "who or what comprises the 'Collective' other than by alleging that they are similarly situated employees of the [defendants]." (Defs.' Mem. at 5.) The complaint alleges that other individuals, besides plaintiffs, were not paid for masonry work they performed on the 1919 W. Crystal project. (Am. Compl. ¶¶ 32, 50, 52, 55.) The defendants have not cited any cases holding that a plaintiff must plead more detail in order to invoke the FLSA's collective-action provision. It may turn out that there are differences among prospective class members that indicate that a collective action is not appropriate. But that is for another stage of the case. <u>See, e.g.,</u> <u>Blakes v. Illinois Bell Telephone Co.</u>, No. 11 CV 336, 2011 WL 2446598, *2 (N.D. Ill. June 15, 2011) (describing the two-step FLSA collective-action certification procedure); <u>Taillon v. Kohler Rental Power, Inc.</u>, No. 02 C 8882, 2003 WL 2006593, *1-2 (N.D. Ill. 2003) (similar).

- 11 -

### (3)  Plaintiffs' State Law Wage Claims

For the reasons we have just discussed, we reject the Haltz Defendants' contention that the plaintiffs' state law wage claims are insufficiently detailed to state a claim.  (<u>See</u> Defs.' Mem. at 6.)  Defendants also argue, with respect to plaintiffs' IWPCA claim, that plaintiffs have failed to allege an "agreement" to pay wages.  The IWPCA requires employers, "at least semi-monthly, to pay every employee all wages earned during the semi-monthly pay period."  820 ILCS 115/3.  "Wages" are "any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties, whether the amount is determined on a time, task, piece, or any other basis of calculation."  820 ILCS 115/2.  The "contract or agreement" defines the employee's wages and benefits, not the IWPCA.  <u>See</u> <u>National Metalcrafters, Div. of Keystone Consol. Industries v. McNeil</u>, 784 F.2d 817, 824 (7th Cir. 1986) (observing in a different context that the IWPCA only requires the employer to "honor his contract").  Under the IWPCA, an "agreement" is "broader than a contract and requires only a manifestation of mutual assent on the part of two or more persons; parties may enter into an 'agreement' without the formalities and accompanying legal protections of a contract."  <u>Zabinsky v. Gelber Group, Inc.</u>, 807 N.E.2d 666, 671 (Ill. App. 2004).  Moreover, "employers and employees can manifest their assent to conditions of employment by conduct alone."

- 12 -

<u>Landers-Scelfo v. Corporate Office Systems, Inc.</u>, 827 N.E.2d 1051, 1059 (Ill. App. 2005). Plaintiffs allege that they performed work on the project with the understanding that they would be paid as Chicago Title released money from the escrow account. (Am. Compl. ¶¶ 73-76, 85, 89); <u>see</u> <u>Landers-Scelfo</u>, 827 N.E.2d at 1059 ("[A]n employer and an employee, by acting in a manner consistent with an employment agreement, can set the material terms of the agreement, including the amount of compensation and the identity of the employer."). The complaint does not specifically request payment of any agreed-upon wage above the minimum, (<u>cf.</u> Pls.' Resp. at 18 n.5 (stating that based upon initial "teaser" payments plaintiffs expected to earn approximately $20 an hour)), but it does allege that plaintiffs were not paid within the time required by the statute. (<u>See</u> Am. Compl. ¶¶ 62-63); <u>see also</u> 820 ILCS 115/3-4. We conclude that plaintiffs have sufficiently pled an IWPCA violation.

Defendants also argue that plaintiffs have failed to state an AFWAA claim because they have not alleged that they made a pre-suit demand for payment. <u>See</u> 705 ILCS 225/1 (authorizing attorneys fees where, among other requirements, the plaintiff makes a demand at least three days prior to suit for unpaid wages in an amount at or below the amount ultimately found due and owing). Plaintiffs effectively concede that they did not make the required demand, arguing instead that the Illinois Legislature recently amended the IWPCA to permit plaintiffs to recover attorney's fees. (<u>See</u> Pls.'

- 13 -

Resp. at 8); <u>see also</u> 820 ILCS 115/14. Therefore, plaintiffs no longer need to rely on the AFWAA to recover attorney's fees in cases alleging IWPCA violations. We consider the AFWAA claim withdrawn, but Count III — including the request for attorney's fees — otherwise stands. <u>See</u> <u>Hatmaker v. Memorial Medical Center</u>, 619 F.3d 741, 743 (7th Cir. 2010) (plaintiffs are not required to plead legal theories, and a plaintiff who relies on an incorrect theory may correct the error in response to a dispositive motion).

## C.  **Plaintiffs' Fraud Claims**

The Haltz Defendants argue that plaintiffs have not alleged the circumstances of the fraud in sufficient detail to satisfy Rule 9(b)'s heightened pleading requirements. <u>See</u> Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). A plaintiff satisfies this requirement by pleading "the who, what, when, where, and how" of the alleged fraud. <u>DiLeo v. Ernst & Young</u>, 901 F.2d 624, 627 (7th Cir. 1990). In Count IV plaintiffs allege that Dillon, acting as an officer of Haltz, fraudulently induced the plaintiffs to continue working on the project with false assurances that they would be paid. Dillon's alleged conversation with MacNab about "Contract A" is a key allegation supporting Count IV, but the timing of this conversation is unclear. Plaintiffs allege that Dillon and MacNab had an initial meeting "[p]rior to December 2007," and that "[s]ubsequent to that

meeting" Dillon gave MacNab a copy of Contract A. (Am. Compl. ¶¶ 67, 70.) Had Haltz and RMR amended the contract before that time? The complaint does not say. If they only amended the contract afterwards, then it is difficult to see how Dillon's conversation with MacNab was fraudulent.[3] This leaves Dillon's "numerous statements" to plaintiffs and to MacNab that there was enough money in the escrow account to cover plaintiffs' wages and that "'checks were on the way.'" (Id. at ¶ 85.) We can infer a general time period when Dillon allegedly made these statements — between December 2007 and February 2008 — but plaintiffs have not alleged a specific date or location for any particular statement. Plaintiffs must supply this detail to satisfy Rule 9(b): this is not information that is exclusively in the defendants' control. They should also specifically indicate what Dillon told the plaintiffs. Under the circumstances, we do not think it is appropriate to lump MacNab and the plaintiffs together. Count IV is dismissed without prejudice.

The problem with Count V is more substantive. Plaintiffs allege that Selvaggio told MacNab to falsely represent to Chicago Title that he (MacNab) was Haltz's vice president. (Am. Compl. ¶ 100.) The details of the escrow arrangement are unclear, but we infer from this allegation that Chicago Title was only authorized to disburse money to Haltz. (See id. (alleging that Chicago Title

---

[3] Plaintiffs allege that Ryan told MacNab that Contract A "was never a real contract," (see Am. Compl. ¶ 83), but it is unclear what that means.

refused to disburse the money to MacNab or Synergy).)  Haltz was then responsible to distribute the funds to vendors and laborers. Plaintiffs allege that Selvaggio asked MacNab to pose as Haltz's vice president "in order to conceal the fact that $11,000 would be tendered to Selvaggio, rather than to the plaintiffs and others who had performed labor on the Project."  Arguably, this allegation goes to Selvaggio's fraudulent intent, although it is unclear how plaintiffs were harmed by this ruse if the money should have been tendered to Selvaggio (or another Haltz officer) in the first instance.  In any event, plaintiffs do not allege that they justifiably relied on Selvaggio's (really MacNab's) alleged misrepresentation to Chicago Title.  <u>See</u> <u>Aasonn, LLC v. Delaney</u>, --- N.E.2d ---, 2011 WL 6056460, *8 (Ill. App. Ct. Dec. 2, 2011)("The elements of common-law fraud are: (1) a false statement of material fact; (2) the defendant knew the statement was false; (3) the defendant intended that the statement induce the plaintiff to act; (4) the plaintiff relied upon the truth of the statement; and (5) the plaintiff suffered damages from his reliance on the statement.").  Accordingly, Count V is dismissed without prejudice.[4]

---

[4]/  We do not reach defendants' alternative argument that Counts IV and V allege "promissory fraud," which generally speaking Illinois courts do not recognize as a tort.  <u>HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.</u>, 545 N.E.2d 672, 682 (Ill. 1989) ("[M]isrepresentations of intention to perform future conduct, even if made without a present intention to perform, do not generally constitute fraud.").  We note, however, that the exception for "schemes of promissory fraud" is broad.  <u>Id.</u>; <u>see also</u> <u>Desnick v. American Broadcasting Companies, Inc.</u>, 44 F.3d 1345, 1354 (7th Cir. 1995) (characterizing the difference between "promissory fraud" and a "scheme of promissory fraud" as

- 16 -

## D.  Plaintiffs' Claim for Conversion Against Selvaggio

Defendants argue that plaintiffs' claim for unpaid wages cannot support a claim for conversion.  "To state a claim for conversion, a plaintiff must allege (1) he has a right to the property at issue; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he has made a demand for possession of the property; and (4) defendant has wrongfully assumed control, dominion, or ownership of the property without authorization."  Song v. PIL, L.L.C., 640 F.Supp.2d 1011, 1017 (N.D. Ill. 2010) (citing Loman v. Freeman, 890 N.E.2d 446, 461 (2008)).  "An asserted right to money normally will not support a claim for conversion . . . [unless] the money at issue can be described as 'specific chattel'" (i.e., a specific fund).  Horbach v. Kaczmarek, 288 F.3d 969, 978 (7th Cir. 2002) (internal citations omitted).  A plaintiff's claim to the fund must be "absolute:" "[i]t must be shown that the money claimed, or its equivalent, *at all times* belonged to the plaintiff and that the defendant converted it to his own use."  Id. (quoting In re Thebus, 483 N.E.2d 1258, 1261 (Ill. 1985)) (internal quotation marks omitted, emphasis in original).

Even assuming that the money held in the escrow account constituted "specific chattel," we agree with defendants that plaintiffs have not alleged an "absolute" claim to those funds.

---

elusive, and speculating that the exception has swallowed the rule).

Plaintiffs argue that their claim is "absolute" because at the time that Selvaggio obtained the $11,000 from MacNab the plaintiffs had already performed work for which they were entitled to payment under the IWPCA. (Pls.' Resp. at 20-21.) They do not support their argument with any legal authorities, and it is contrary to the requirement that the money belong to them "at all times." See Horbach, 288 F.3d at 978; see also DeGeer v. Gillis, 707 F.Supp.2d 784, 790-91 (N.D. Ill. 2010) (concluding that the plaintiff's alleged right to a non-discretionary bonus did not support a claim for conversion). As we understand the complaint, RMR (or Haltz) funded an escrow account at some point after they executed the masonry contract. (Am. Compl. ¶¶ 72, 74-75.) Thereafter, periodic progress payments were made by Chicago Title to Haltz from the escrow account. (Id. at ¶ 74.) Plaintiffs allege that they and other laborers and creditors were entitled to payment from those funds, (id. at ¶ 75), but they were only entitled to payment upon completing the work they were hired to perform. See Doing Steel, Inc. v. Castle Const. Corp., No. 02 C 1674, 2002 WL 31664476, *4 (N.D. Ill. Nov. 21, 2002) (concluding that a contractor did not have an absolute right to funds "at all times" because it "was entitled to the money only upon the successful performance of its duties"); see also DeGreer, 707 F.Supp.2d at 790 ("DeGeer was not entitled to a bonus, let alone the specific sum he seeks, unless certain conditions were met."). We have some doubts about whether

plaintiffs can amend their complaint to correct the problems we have identified with their conversion claim, but we will give them an opportunity to do so. Count VI is dismissed without prejudice.

## E.  Plaintiffs' Claim for Unjust Enrichment

Defendants argue that the FLSA preempts plaintiffs' claim for unjust enrichment. Preemption is an affirmative defense, and therefore not really a proper basis for a Rule 12(b)(6) motion. However, the plaintiffs have not objected to the defendants' motion on that ground. (See Pls.' Resp. at 17-18.) Accordingly, we will address the merits of defendants' preemption defense. See, e.g., Kyriakoulis v. DuPage Health Center, Ltd., No. 10 C 7902, 2011 WL 2420201, *1 (N.D. Ill. June 9, 2011). "[I]f all that is sought in a state law quantum meruit or unjust enrichment claim is unpaid overtime compensation or minimum wages that are guaranteed by the FLSA, those state law claims are preempted. However, if the state common law claim seeks something other than what the FLSA can provide, such as, for example, regular wages not paid at the contracted rate, the claim is not preempted." Nicholson, 2010 WL 551551, *6. Plaintiffs contend that they seek "gap time" — wages for fewer than 40 hours of work per week at a rate greater than the minimum wage — in their claim for unjust enrichment. Id. ("To the extent Nicholson seeks pay for 'gap time,' that claim is not cognizable under the FLSA and may survive."). This is a creative interpretation of the complaint, which does not mention "gap time"

- 19 -

or otherwise allege that the plaintiffs were promised any particular wage for the work that they performed. The complaint only alleges that the defendants failed to pay plaintiffs the required minimum wage and overtime compensation. (Am. Compl. ¶¶ 49-52.) These claims are governed exclusively by the FLSA and state statutory wage laws. See, e.g., Kyriakoulis, 2011 WL 2420201, at *1-2 (concluding that the FLSA preempted common law claims for unjust enrichment, quantum meruit, and breach of implied contract based upon unpaid overtime). In a footnote in their response brief plaintiffs state that they "understood (from the initial 'teaser' payments they received) that their hourly wage would be approximately $20 per hour." (Pls.' Resp. at 18 n.5.) There is no such allegation in the complaint. A plaintiff may "suggest facts outside the pleading, including on appeal, showing that a complaint should not be dismissed." See Reynolds v. CB Sports Bar, Inc., 623 F.3d 1143, 1147 (7th Cir. 2010). But plaintiffs are not bolstering otherwise sufficient allegations with new facts: the complaint, as drafted, does not provide adequate notice that plaintiffs are seeking "gap time" compensation. See Harrell v. United States, 13 F.3d 232, 236 (7th Cir. 1993) ("If a complaint fails to state a claim even under the liberal requirements of the federal rules, the plaintiff cannot cure the deficiency by inserting the missing allegations in a document that is not either a complaint or an amendment to a complaint."); see

- 20 -

also <u>Car Carriers, Inc. v. Ford Motor Co.</u>, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). We conclude that Count VII, as currently pled, is preempted by the FLSA.

**F.  Defendants' Fed. R. Civ. P. 19 Motion**

Defendants argue that Kevin MacNab is a necessary party to this litigation and ask us to compel plaintiffs to join him as a defendant to their fraud and conversion claims. Because we have dismissed those claims, albeit without prejudice, defendants' Rule 19 motion is effectively moot. (<u>See</u> Defs.' Rule 19 Mem. at 2 (asking us to join MacNab in the event we deny their motion to dismiss Counts IV, V, and VI).) Defendants' Rule 19 motion is denied without prejudice to renewal at a later date.

<u>**CONCLUSION**</u>

Defendants' motion to dismiss (62) is granted in part and denied in part. The motion is denied as to Counts I, II, and III. Counts IV, V, VI, and VII are dismissed without prejudice. Plaintiffs are given leave to file an amended complaint by January 27, 2012 that cures the deficiencies we have identified, if they can do so. If plaintiffs choose not to file an amended complaint by that date, we will dismiss Counts IV, V, VI, and VII with prejudice. Defendants' Rule 19 motion (64) is denied without

- 21 -

prejudice to renewal at a later date.  A status hearing is set for
February 1, 2012 at 11:00 a.m.


DATE:        January 4, 2012

ENTER:       _____

             John F. Grady, United States District Judge